

5/10/2021

Darryl Mendillo

,

Dear Darryl,

Welcome to the goPuff team! We are pleased to extend an offer of employment to you for the position of Software Engineer II at GoBrands, Inc. d/b/a goPuff. ("Company" or "goPuff") based out of our Philadelphia, PA location. This position will report to Ian Strickman. This letter sets out the terms of your employment with Company, which will start on 5/24/2021 (the "Effective Date"), should you accept this offer. This offer is open for you to accept until **5/14/2021**, at which time it will be deemed to be withdrawn.

Your initial salary will be $140,000.00 per year, less applicable tax and other withholdings, paid on a bi-weekly basis in accordance with Company's normal payroll practices.

This position may be eligible for up to 10% of the base pay in bonus payments, subject to management discretion and obtainment of Company metrics. You will only be eligible to participate in the then-current calendar year bonus structure, if any, if your hire date is between January through October of that year; provided your first bonus award will be prorated to the Effective Date. All other hire dates will be eligible the next calendar year.

You will also be eligible to participate in our health benefits plan and participate in our Company-sponsored 401(k). More details about this and other benefits will be made available at or near the Effective Date. You should note that we reserve the right to cancel or change the benefit plans and programs we offer employees at any time.

Subject to the approval of the Company's Board of Directors (the "Board"), the Company will issue to you 300 Restricted Stock Units (the "RSUs") which, upon vesting, will be settled for an equivalent number of shares of the Company's Common Stock (the "Shares"), subject to the terms of a Restricted Stock Unit Agreement. In order to vest, the RSUs must meet both the Service-Based Requirement and the Liquidity Event Requirement prior to their expiration date. 1/4 of the RSUs will meet the Service-Based Requirement on the one year anniversary of the Effective Date of this Agreement, and the remaining 3/4 of the RSUs will meet the Service-Based Requirement in 1/36 increments for each month following the one year anniversary of the Effective Date of this Agreement (such that the RSUs will be fully vested after 4 years).  The Liquidity Event Requirement will be satisfied upon the first to occur of: (i) a Sale Event (but only to the extent the transaction or event qualifies as a change in control event within the meaning of Code Section 409A) or (ii) an Initial Public Offering, as each such event is defined in the Plan. The RSUs are subject to Board approval and are governed by the Company's 2016 Stock Incentive Plan (the "Plan") and related Plan documents. Further, the grant of the RSUs is contingent upon your execution of the Company's standard form of restricted stock unit grant agreement, which includes certain protective provisions, including the

Company's right to repurchase the Shares.  If there is any conflict between this Agreement and the Plan or the related Plan documents, the Plan documents shall control

If you accept this offer, your employment with Company will be "at will." This means it is not for any specific period of time and can be terminated by you at any time for any reason. Likewise, Company can terminate the employment relationship at any time, with or without cause or advance notice. In addition, Company reserves the right to modify your compensation, position, duties or reporting relationship to meet business needs and use its managerial discretion in deciding on appropriate discipline.

This offer is contingent upon you: 1) signing Company's standard form of its confidentiality agreement (the "Confidentiality Agreement", a copy of which is enclosed); and 2) timely providing Company with appropriate documents establishing your identity and right to work in the United States; and 3) completing successfully review of job references (if applicable) and a background check which is conducted by a third-party administrator. This offer will be withdrawn if any of the above conditions are not satisfied.

You will be subject to all of Company's applicable employment and other policies, which are subject to change from time to time, as outlined in the employee handbook and elsewhere.

This letter and the enclosed Confidentiality Agreement constitute the entire agreement between you and Company regarding the terms and conditions of your employment, and supersede all negotiations, representations or agreements, whether prior or contemporaneous, written or oral, between you and Company on this subject. The provisions of this agreement regarding "at will" employment may only be modified by a document signed by you and an authorized representative of Company.

Feel free to contact me regarding any questions you may have about this offer.

We very much appreciate your interest in working with goPuff and are very enthusiastic about you joining our team.

Sincerely,

Karen Fascenda

VP of People

I agree to and accept employment with GoBrands, Inc. on the terms and conditions set forth in this agreement. I understand and agree that my employment with Company is at-will. I also understand and agree that this offer letter may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

☑ **Signature** Darryl Mendillo 5/10/2021 11:05 AM
(checking the checkbox above is equivalent to a handwritten signature)



**GOBRANDS, INC.**

**AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT, NON-COMPETITION, NON-SOLICITATION AND ARBITRATION AGREEMENT**

As a condition of my employment with GoBrands, Inc., its subsidiaries, affiliates, successors or assigns (collectively, the "**Company**"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following provisions of this At-Will Employment, Confidential Information, Invention Assignment, Non- Competition, Non-Solicitation and Arbitration Agreement (this "**Agreement**"):

1. **AT-WILL EMPLOYMENT**
   I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR NO SPECIFIED TERM AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE PRESIDENT OR CEO OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE. I FURTHER ACKNOWLEDGE THAT THE COMPANY MAY MODIFY JOB TITLES, SALARIES, AND BENEFITS FROM TIME TO TIME AS IT DEEMS NECESSARY.

2. **CONFIDENTIALITY**
   A. *Definition of Confidential Information.* I understand that **"Company Confidential Information"** means information that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential. Company Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course of my employment with Company. Company Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Company Confidential Information. By example, and without limitation, Company Confidential Information includes any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Company, or to the Company's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property. Notwithstanding the foregoing, Company Confidential Information shall not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by Company to me; (ii) becomes publicly known or made generally available after disclosure by Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by Company as shown by my then-contemporaneous written records. I understand that nothing in this Agreement is intended to limit employees' rights

to discuss the terms, wages, and working conditions of their employment, as protected by applicable law, and I am free to discuss the terms and conditions of my employment with others to the extent expressly permitted by Section 7 of the National Labor Relations Act.

B. *Nonuse and Nondisclosure.* I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and I will not (i) use the Company Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose the Company Confidential Information to any third party without the prior written authorization of the CEO, officer of the Company, or the Board of Directors of the Company. Prior to disclosure when compelled by applicable law; I shall provide prior written notice to the CEO and General Counsel of the Company (as applicable). I agree that I obtain no title to any Company Confidential Information, and that as between Company and myself, the Company retains all Confidential Information as the sole property of the Company I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that my obligations under this **Section 2.B** shall continue after termination of my employment.

C. *Former Employer Confidential Information.* I agree that during my employment with the Company, I will not improperly use, disclose, or induce the Company to use any proprietary information or trade secrets of any former employer or other person or entity with which I have an obligation to keep in confidence. I further agree that I will not bring onto the Company's premises or transfer onto the Company's technology systems any unpublished document, proprietary information, or trade secrets belonging to any such third party unless disclosure to, and use by, the Company has been consented to in writing by such third party.

D. *Third Party Information.* I recognize that the Company has received and in the future will receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators (**"Associated Third Parties"**), their confidential or proprietary information (**"Associated Third Party Confidential Information"**) subject to a duty on the Company's part to maintain the confidentiality of such Associated Third Party Confidential Information and to use it only for certain limited purposes. By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, that I owe the Company and its Associated Third Parties a duty to hold all such Associated Third Party Confidential Information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company.

3. **OWNERSHIP**

A. *Assignment of Inventions.* As between Company and myself, and myself, I agree that all right, title, and interest in and to any and all copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries and trade

secrets conceived, discovered, authored, invented, developed or reduced to practice by me, solely or in collaboration with others, during the period of time I am in the employ of the Company (including during my off-duty hours), or with the use of Company's equipment, supplies, facilities, or Company Confidential Information, and any copyrights, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing (collectively, **"Inventions"**), are the sole property of the Company. I also agree to promptly make full written disclosure to the Company of any Inventions, and to deliver and assign and hereby irrevocably assign fully to the Company all of my right, title and interest in and to Inventions. I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions is within the Company's sole discretion and for the Company's sole benefit, and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

AA. The following **Section 3.AA** applies only to employees based within the State of California on the effective date of this Agreement. I understand that the provisions of this Agreement requiring assignment of Inventions (as defined in **Section 3.A** above) to the Company do not apply to any invention that qualifies fully under the provisions of California Labor Code Section 2870, the provisions of which are set forth in <u>Exhibit B</u>. I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and are not otherwise disclosed on Exhibit A to permit a determination of ownership by the Company. Any such disclosures will be received in confidence.

AAA. The following **Section 3.AAA** applies only to employees based within the State of Illinois on the effective date of this Agreement. I understand that this Agreement does not apply to any invention that qualifies fully as a non-assignable invention under the provisions of Chapter 765, Section 1060/2 of the Illinois Compiled Statutes Annotated, the provisions of which are set forth in <u>Exhibit B</u>.

AAAA. The following **Section 3.AAAA** applies only to employees based within the State of Washington on the effective date of this Agreement. I understand that this Agreement does not apply to any invention that qualifies fully as a non-assignable invention under the provisions of Section 49.44.140 of the Revised Code of Washington, the provisions of which are set forth in <u>Exhibit B</u>.

B. *Pre-Existing Materials.* I have attached hereto as <u>Exhibit A</u>, a list describing all inventions, discoveries, original works of authorship, developments, improvements, trade secrets and other proprietary information or intellectual property rights owned by me or in which I have an interest prior to, or separate from, my employment with the Company and which relate to the Company's proposed business, products, or research and development (**"Prior Inventions"**); or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. I acknowledge and agree that any failure on my part to complete <u>Exhibit A</u> will be deemed as certification by me that no such Prior Inventions exist. Furthermore, I represent and warrant that if any Prior Inventions are included on <u>Exhibit A</u>, they will not materially affect my ability to perform all obligations under this Agreement. I will inform the Company in writing before incorporating such Prior Inventions into any Invention or otherwise utilizing such Prior Invention in the course of my employment with the Company, and the Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, transferable worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Inventions, without restriction, including, without limitation, as

part of or in connection with such Invention, and to practice any method related thereto. I will not incorporate any invention, improvement, development, concept, discovery, work of authorship or other proprietary information owned by any third party into any Invention without the Company's prior written permission.

C. *Moral Rights.* Any assignment to the Company of Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, **"Moral Rights"**). To the extent that Moral Rights cannot be assigned under applicable law, I hereby waive and agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law

D. *Maintenance of Records.* I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. As between Company and myself, the records are and will be available to and remain the sole property of the Company at all times.

E. *Further Assurances.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, and all other instruments that the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights, and in order to deliver, assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title, and interest in and to all Inventions, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligations under this **Section 3.E** shall continue after the termination of this Agreement.

F. *Attorney-in-Fact.* I agree that, if the Company is unable because of my unavailability, mental or physical incapacity, or for any other reason to secure my signature with respect to any Inventions, including, without limitation, for the purpose of applying for or pursuing any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to the Company in **Section 3.A**, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf to execute and file any papers and oaths, and to do all other lawfully permitted acts with respect to such Inventions to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by me. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

4. **CONFLICTING OBLIGATIONS**

A. *Current Obligations.* I agree that during the term of my employment with the Company, I will not engage in or undertake any other employment, occupation, consulting relationship, or commitment that is directly related to the business in which the Company is now involved or becomes involved or has plans to become involved, nor will I engage in any other activities that conflict with my obligations to the Company.

B. *Prior Relationships.* Without limiting **Section 4.A**, I represent and warrant that I have no other agreements, relationships, or commitments to any other person or entity that conflict with the provisions of this Agreement, my obligations to the Company under this Agreement, or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality

agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices, and documents), I have returned all property and confidential information belonging to all prior employers (and/or other third parties I have performed services for in accordance with the terms of my applicable agreement). Moreover, I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by any of them resulting from my breach of my obligations under any agreement with a third party to which I am a party or obligation to which I am bound, as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, except as prohibited by law.

5. **RETURN OF COMPANY MATERIALS**
Upon separation from employment with the Company, on Company's earlier request during my employment, or at any time subsequent to my employment upon demand from the Company, I will immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information, Associated Third Party Confidential Information, all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), all tangible embodiments of the Inventions, all electronically stored information and passwords to access such property, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items, including, without limitation, those records maintained pursuant to **Section 3.D**. I also consent to an exit interview to confirm my compliance with this **Article** 5.

6. **TERMINATION CERTIFICATION**
Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit C. I also agree to keep the Company advised of my home and business address for a period of three (3) years after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

7. **NOTIFICATION OF NEW EMPLOYER**
In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

8. **NO SOLICITATION OF EMPLOYEES, CONSULTANTS, CONTRACTORS, OR CUSTOMERS OR POTENTIAL CUSTOMERS.** I agree that during the period of my employment and for the one year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, except on behalf of the Company:

   A. solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of the Company to terminate his or her relationship with the Company; or

   B. solicit, induce or attempt to induce any Customer or Potential Customer (as defined below), or any consultant or independent contractor with whom I had direct or indirect contact during my employment with the Company or whose identity I learned as a result of my employment with the Company, to terminate, diminish, or materially alter in a manner harmful to the Company its relationship with the Company.

The parties agree that for purposes of this Agreement, a "Customer or Potential Customer" is any person or entity who or which, at any time during the one (1) year prior to the date my employment with the Company ends, (i) contracted for, was billed for, or received from the Company any product, service or process with which I worked directly or indirectly during my employment by the Company or about which I acquired Company Confidential Information; or (ii) was in contact with me or in contact with any other employee, owner, or agent of the Company, of which contact I was or should have been aware, concerning any product, service or process with which I worked directly or indirectly during my employment with the Company or about which I acquired Company Confidential Information; or (iii) was solicited by the Company in an effort in which I was involved or of which I was or should have been aware.

9. **NON-COMPETE PROVISION.**

I agree that: (a) during my employment with the Company, and (b) for a period of one year after my employment with the Company ends for any reason, I will not, directly or indirectly, compete with the Company by performing the same or similar services that I performed while an employee of the Company for any person or entity engaged in the design, development, marketing, production, distribution, or sale of a Competitive Product or Service (as defined below) within the Geographic Territory (as defined below). Notwithstanding the foregoing, I am free to work for a Competitor (as defined below) after my employment with the Company ends if (i) such work does not include any responsibilities for, or in connection with, a Competitive Product or Service; and (ii) I have not assumed a position with a Competitor that is reasonably likely to lead to the inevitable disclosure or use of the Company's trade secrets or other Company Confidential Information.

For the purposes of this Agreement, a "Competitor" is any person or entity which designs, develops, produces, distributes, markets, sells or provides a Competitive Product or Service. A "Competitive Product or Service" means any product or service that has been or is being designed, developed, marketed, produced, distributed, sold or provided by anyone other than the Company and is (i) of the same general type or is used for the same purpose as a product or service that the Company designed, developed, marketed, produced, distributed, sold or provided during my employment with the Company; and/or (ii) competes for the same customers with any product or service that the Company markets or is developing to market during my employment with the Company. The "Geographic Territory" shall be (i) the 45-mile radius around each city in which Company operates at the time of my termination and (ii) the 45-mile radius around each city for which Company had written plans to expand into as of the time of my termination.

The foregoing **Section 9** shall not apply to employees based in California at the time they enter into this Agreement.

10. **REASONABLENESS OF RESTRICTIONS.**
   A. I agree that I have read this entire Agreement and understand it. I agree that this Agreement does not prevent me from earning a living or pursuing my career. I agree that the restrictions contained in this Agreement are reasonable, proper, and necessitated by the Company's legitimate business interests. I represent and agree that I am entering into this Agreement freely and with knowledge of its contents with the intent to be bound by the Agreement and the restrictions contained in it.

   B. In the event that a court finds this Agreement, or any of its restrictions, to be ambiguous, unenforceable, or invalid, I and the Company agree that the court shall read the Agreement as a whole and interpret the restriction(s) at issue to be enforceable and valid

to the maximum extent allowed by law.

C. If the court declines to enforce this Agreement in the manner provided in this Agreement, I and the Company agree that this Agreement will be automatically modified to provide the Company with the maximum protection of its business interests allowed by law and I agree to be bound by this Agreement as modified.

11. **CONFLICT OF INTEREST GUIDELINES**
I agree to diligently adhere to all policies of the Company, including the Company's Conflict of Interest Guidelines. A copy of the Company's current Conflict of Interest Guidelines is attached as Exhibit D hereto, but I understand that these Conflict of Interest Guidelines may be revised from time to time during my employment.

12. **REPRESENTATIONS**
Without limiting my obligations under **Section 3.E** above, I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent and warrant that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

13. **AUDIT**
I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, voicemail, or documents that are used to conduct the business of the Company. All information, data, and messages created, received, sent, or stored in these systems are, at all times, the property of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business- related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized, or non-compliant applications to the Company's technology systems, including, without limitation, open source or free software not authorized by the Company, and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non- licensed software or websites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone, and technology systems to which I will have access in connection with my employment.

I am aware that the Company has or may acquire software and systems that are capable of monitoring and recording all network traffic to and from any computer I may use. The Company reserves the right to access, review, copy, and delete any of the information, data, or messages accessed through these systems with or without notice to me and/or in my absence. This includes, but is not limited to, all e-mail messages sent or received, all website visits, all chat sessions, all news group activity (including groups visited, messages read, and postings by me), and all file transfers into and out of the Company's internal networks. The Company further reserves the right to retrieve previously deleted messages from e-mail or voicemail and monitor usage of the Internet, including websites visited and any information I have downloaded. In addition, the Company may review Internet and technology systems activity and analyze usage patterns, and may choose to publicize this data to assure that technology systems are devoted to legitimate business purposes.

14. **MUTUAL AGREEMENT TO ARBITRATE**
A. *Agreement to Arbitrate*. In the event of any dispute or claim relating to or arising out of my employment relationship with the Company, this Agreement, or the termination of my employment with Company for any reason, Company and I agree that all disputes shall

be fully resolved by confidential, binding arbitration conducted by a single neutral arbitrator through the American Arbitration Association (**"AAA"**) pursuant to the AAA's Employment Arbitration Rules then in effect, which are available online at the AAA's website at www.adr.org or by requesting a copy from the Human Resources Department. The arbitration shall be located within sixty miles of my current place of work at the Company, if I am still employed, or my last place of work at the Company, if I am no longer employed. The arbitrator shall permit adequate discovery and is empowered to award all remedies otherwise available in a court of competent jurisdiction and any judgment rendered by the arbitrator may be entered by any court of competent jurisdiction. The Company agrees to pay all applicable AAA filing fees and arbitration costs, however, each party will pay each party's own costs and attorneys' fees, if any. The arbitrator shall issue an award in writing and state the essential findings and conclusions on which the award is based. To the fullest extent permitted by applicable law, by signing this Agreement, Company and I both waive the right to have any disputes or claims tried before a judge or jury. The mutual promise by Company and me to arbitrate any and all disputes between us, rather than litigate them before the courts or other bodies, provides the consideration for this agreement to arbitrate. The parties agree that the Company is engaged in transactions involving interstate commerce and that except as provided elsewhere in this Section 14, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this arbitration agreement located within this Section 14.

B. *Exclusions from Agreement to Arbitrate*. This arbitration agreement does not apply to or cover claims for which arbitration is unavailable, such as workers' compensation benefits, unemployment compensation benefits, or charges under the National Labor Relations Act. In addition, this arbitration agreement does not prevent either party from seeking temporary injunctive relief, as permitted by applicable state and federal law. It also does not apply to claims based upon an employee pension or benefit plan that contains an arbitration or other non-judicial resolution procedure, in which case the provisions of that plan shall apply

C. *Requirement to Exhaust Administrative Remedies, if Applicable*. This arbitration agreement does not alter my obligation, nor affect my right, to bring an administrative claim or charge with the Equal Employment Opportunity Commission and/or similar state or local commissions or agencies with respect to discrimination, harassment, and retaliation claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, or similar federal, state and/or local anti-discrimination laws that require exhaustion of administrative remedies prior to filing suit.

D. **CLASS ACTION WAIVER. COMPANY AND I AGREE THAT WE EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, UNLESS BOTH COMPANY AND I AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. IF THIS SPECIFIC PROVISION IS FOUND TO BE UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION PROVISION SHALL BE NULL AND VOID.**

15. **MISCELLANEOUS**
    A. *Governing Law; Consent to Personal Jurisdiction.* This Agreement will be governed by the laws of the Commonwealth of Pennsylvania without regard to conflicts of law rules that may result in the application of the laws of any jurisdiction other than the Commonwealth of Pennsylvania. To the extent that any lawsuit is permitted under this

Agreement, I hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in Philadelphia, Pennsylvania for any lawsuit filed against me by the Company.

B. *Assignability.* This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives, and will be for the benefit of the Company, its successors, and its assigns. There are no intended third-party beneficiaries to this Agreement, except as may be expressly otherwise stated. Notwithstanding anything to the contrary herein, the Company may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of the Company's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, or otherwise.

C. *Entire Agreement.* This Agreement, together with the Exhibits herein and any executed written offer letter between me and the Company, to the extent such materials are not in conflict with this Agreement, sets forth the entire agreement and understanding between the Company and me with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations. I represent and warrant that I am not relying on any statement or representation not contained in this Agreement. Any subsequent change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

D. *Defend Trade Secrets Act.* Pursuant to the Defend Trade Secrets Act of 2016, I acknowledge that I shall not have criminal or civil liability under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I may disclose the trade secret to my attorney and may use the trade secret information in the court proceeding, if I (X) file any document containing the trade secret under seal and (Y) do not disclose the trade secret, except pursuant to court order.

E. *Headings.* Headings are used in this Agreement for reference only and shall not be considered when interpreting this Agreement.

F. *Severability.* If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect

G. *Modification, Waiver.* No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the President or CEO of the Company and me. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

H. *Survivorship.* The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

☑ **Signature** Darryl Mendillo 5/10/2021 11:07 AM
(Checking the checkbox above is equivalent to a handwritten signature)

---

## EXHIBIT A

### LIST OF PRIOR INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number/ Brief Description |
|-------|------|---------------------------------------|
|       |      |                                       |
|       |      |                                       |
|       |      |                                       |
|       |      |                                       |

☑ No inventions or improvements

☐ Additional Sheets Attached

---

☑ **Signature** Darryl Mendillo 5/10/2021 11:07 AM
(Checking the checkbox above is equivalent to a handwritten signature)

---

## EXHIBIT B

California Labor Code Section 2870 states: "(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) Result from any work performed by the employee for the employer. (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

Chapter 765, Section 1060/2 of the Illinois Compiled Statutes Annotated requires the following notification be provided: "The invention assignment provisions of this Agreement do not apply to any invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on your own time, unless (a) the invention relates (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by you for the Company."

Section 49.44.140 of the Revised Code of Washington requires the following notification be provided: "The invention assignment provisions of this Agreement do not apply to any invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on your own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by you for the Company."

**EXHIBIT C**

**TERMINATION CERTIFICATION**

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, any other documents or property, or reproductions of any and all aforementioned items belonging to the Company, its subsidiaries, affiliates, successors or assigns (together, the "**Company**").

I further certify that I have complied with all the terms of the Company's At-Will Employment, Confidential Information, Invention Assignment, Non-Competition, Non-Solicitation and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein) conceived or made by me (solely or jointly with others), as covered by that agreement.

I further agree that, in compliance with the At-Will Employment, Confidential Information, Invention Assignment, Non-Competition, Non-Solicitation and Arbitration Agreement, I will preserve as confidential all Company Confidential Information and Associated Third Party Confidential Information, including trade secrets, confidential knowledge, data, or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information, or other subject matter pertaining to any business of the Company or any of its clients, consultants, or licensees.

After leaving the Company's employment, I will be employed by
_____ in the position of
_____.

☑ **Signature** Darryl Mendillo 5/10/2021 11:07 AM
(Checking the checkbox above is equivalent to a handwritten signature)

Address for Notifications:
,

**EXHIBIT D**

**CONFLICT OF INTEREST GUIDELINES**

It is the policy of the Company to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all officers, employees, and independent contractors must avoid activities that are in conflict, or give the appearance of being in conflict, with these principles and with the interests of the Company. The following are potentially compromising situations that must be avoided:

1. Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended. (The At-Will Employment, Confidential Information, Invention Assignment, Non-Competition, Non-Solicitation and Arbitration Agreement elaborates on this principle and is a binding agreement.)

2. Accepting or offering substantial gifts, excessive entertainment, favors, or payments that may be deemed to constitute undue influence or otherwise be improper or embarrassing to the Company.

3. Participating in civic or professional organizations that might involve divulging confidential information of the Company.

4. Initiating or approving personnel actions affecting reward or punishment of employees or applicants where there is a family relationship or is or appears to be a personal or social involvement.

5. Initiating or approving any form of personal or social harassment of employees.

6. Investing or holding outside directorship in suppliers, customers, or competing companies, including financial speculations, where such investment or directorship might influence in any manner a decision or course of action of the Company.

7. Borrowing from or lending to employees, customers, or suppliers.

8. Acquiring real estate of interest to the Company.

9. Improperly using or disclosing to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity with whom obligations of confidentiality exist.

10. Unlawfully discussing prices, costs, customers, sales, or markets with competing companies or their employees.

11. Making any unlawful agreement with distributors with respect to prices.

12. Improperly using or authorizing the use of any inventions that are the subject of patent claims of any other person or entity.

13. Engaging in any conduct that is not in the best interest of the Company.

Each officer, employee, and independent contractor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of higher management for review. Violations of this conflict of interest policy may result in discharge without warning.